1   ROBBINS GELLER RUDMAN
      & DOWD LLP
2   DARREN J. ROBBINS (168593)
    DAVID C. WALTON (167268)
3   CATHERINE J. KOWALEWSKI (216665)
    655 West Broadway, Suite 1900
4   San Diego, CA  92101
    Telephone:  619/231-1058
5   619/231-7423 (fax)
    darrenr@rgrdlaw.com
6   davew@rgrdlaw.com
    katek@rgrdlaw.com
7
    Attorneys for Plaintiff
8
    [Additional counsel appear on signature page.]
9
                 UNITED STATES DISTRICT COURT
10
                 CENTRAL DISTRICT OF CALIFORNIA
11
                      SOUTHERN DIVISION
12
13   NATHANIEL L. ANDERSON,              )   VIA FAX
     Individually and on Behalf of All Others )
     Similarly Situated,                 )   No.   SACV12-01647 SVW (SHx)
14                                        )
                          Plaintiff,      )   CLASS ACTION
15                                        )
            vs.                           )   COMPLAINT FOR VIOLATION OF
16                                        )   THE FEDERAL SECURITIES LAWS
     PEREGRINE PHARMACEUTICALS,           )
17   INC., STEVEN W. KING, PAUL J.        )
     LYTLE, JOSEPH S. SHAN and            )
18   ROBERT L. GARNICK,                   )
                                          )
19                        Defendants.     )   DEMAND FOR JURY TRIAL
                                          )
20   ─────────────────────────────────────
21
22
23
24
25
26
27
28

FILED
2012 SEP 28  PM 1:23
CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
SANTA ANA
BY_____



**JURISDICTION AND VENUE**

1.     The claims asserted herein arise under and pursuant to §§10(b) and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act") (15 U.S.C. §§78j(b) and 78t(a)) and Rule 10b-5 (17 C.F.R. §240.10b-5) promulgated thereunder by the U.S. Securities and Exchange Commission ("SEC").

2.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1331 and §27 of the 1934 Act (15 U.S.C. §78aa).

3.     Venue is proper in this District pursuant to §27 of the 1934 Act and 28 U.S.C. §1391(b), as many of the acts and practices complained of herein occurred in substantial part in this District.

4.     Peregrine Pharmaceuticals, Inc. ("Peregrine" or the "Company") maintains its principal executive offices at 14282 Franklin Avenue, Tustin, California 92780. Certain of the acts and conduct complained of herein, including dissemination of materially false and misleading information to the investing public, occurred in this District.

5.     In connection with the acts alleged in this Complaint, defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications and the facilities of the national securities markets.

**INTRODUCTION**

6.     This is a securities class action on behalf of all persons who purchased or otherwise acquired Peregrine common stock between August 30, 2012 and September 26, 2012, inclusive (the "Class Period"), against Peregrine and certain of its officers and/or directors for violations of the 1934 Act. These claims are asserted against Peregrine and certain of its officers and/or directors who made materially false and misleading statements during the Class Period in press releases, analyst conference calls, and filings with the SEC.

7.     Peregrine is a clinical-stage biopharmaceutical company that develops and manufactures monoclonal antibodies for the treatment of cancer and viral infections.  Peregrine's key product is bavituximab, a phosphatidylserine ("PS") targeting anti-body.  Peregrine is studying bavituximab as a primary or front-line and second-line treatment for non-small cell lung cancer.

8.     Specifically, throughout the Class Period, defendants violated the federal securities laws by disseminating false and misleading statements to the investing public about the effectiveness of the Company's experimental drug bavituximab as a treatment for non-small cell lung cancer, making it impossible for shareholders to gain a meaningful or realistic understanding of the drug's prospects.  As a result of defendants' false statements, Peregrine's stock traded at artificially inflated prices during the Class Period, reaching a high of $5.39 per share on September 21, 2012.

9.     On September 24, 2012, Peregrine issued a press release warning of discrepancies in the results of the mid-stage lung cancer trial and advising investors that they should not rely on clinical data the Company had previously disclosed from its Phase II bavituximab trial in patients with second-line non-small cell lung cancer.

10.    On this news, Peregrine's stock plummeted $4.23 per share to close at $1.16 per share on September 24, 2012, a one-day decline of 78% on high volume.

11.    On September 26, 2012, Peregrine filed a Form 8-K with the SEC, which disclosed that the Company had received a written notice of default from Oxford Finance LLC ("Oxford"), with respect to a security agreement the Company had entered into on August 30, 2012.  According to the Company, the lender deemed the Company's disclosure on September 24, 2012 concerning the major discrepancies in the results from its cancer trial to be a material adverse change under the terms of the loan agreement and, as result, the lender accelerated the repayment of the loan and demanded repayment in full for the outstanding amounts.

12.    On this news, Peregrine's stock declined $0.55 per share to close at $1.11 per share on September 27, 2012, a one-day decline of 33% on high volume.

1        13.   The true facts, which were known by the defendants but concealed from

2   the investing public during the Class Period, were as follows:

3        (a)   The previously reported results from Peregrine's Phase II trial in

4   second-line non-small cell lung cancer could not be relied upon, as major

5   discrepancies existed between patient sample test results and patient treatment codes;

6        (b)   Peregrine lacked the proper internal controls related to conducting

7   clinical trials and reporting the results of the clinical trials;

8        (c)   Peregrine lacked sufficient capital to fund its operations for the

9   long term; and

10       (d)   Peregrine lacked a reasonable basis to make positive statements

11  about the Company or its outlook, including statements about the effectiveness of

12  bavituximab for patients with non-small cell lung cancer or the Company's ability to

13  fund its operations for the next 12 months.

14       14.   As a result of defendants' false statements, Peregrine stock traded at

15  artificially inflated levels during the Class Period.   However, after the above

16  revelations seeped into the market, the Company's shares were hammered by massive

17  sales, sending them down 79% from their Class Period high.

18                           **PARTIES**

19       15.   Plaintiff Nathaniel L. Anderson purchased the common stock of

20  Peregrine during the Class Period as set forth in the certification attached hereto and

21  was damaged as the result of defendants' wrongdoing as alleged in this complaint.

22       16.   Defendant Peregrine is a biopharmaceutical company.

23       17.   Defendant Stephen W. King ("King") is, and at all relevant times was,

24  the Company's Chief Executive Officer ("CEO"), President and a director.

25       18.   Defendant Paul J. Lytle ("Lytle") is, and at all relevant times was, the

26  Company's Chief Financial Officer ("CFO").

27       19.   Defendant Joseph S. Shan ("Shan") is, and at all relevant times was, the

28  Company's Vice President, Clinical and Regulatory Affairs.

- 3 -

20.    Robert L. Garnick ("Garnick") is, and at all relevant times was, the Head of Regulatory Affairs.

21.    The defendants named above in ¶¶17-20 are referred to herein as the "Individual Defendants."

22.    The Individual Defendants, because of their positions with the Company, possessed the power and authority to control the contents of Peregrine's quarterly reports, press releases and presentations to securities analysts, money and portfolio managers and institutional investors, *i.e.*, the market. They were provided with copies of the Company's reports and press releases alleged herein to be misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected. Because of their positions with the Company, and their access to material non-public information available to them but not to the public, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public and that the positive representations being made were then materially false and misleading. The Individual Defendants are liable for the false statements pleaded herein.

## FRAUDULENT SCHEME AND COURSE OF BUSINESS

23.    Defendants are liable for: (i) making false statements; or (ii) failing to disclose adverse facts known to them about Peregrine. Defendants' fraudulent scheme and course of business that operated as a fraud or deceit on purchasers of Peregrine common stock was a success, as it: (i) deceived the investing public regarding Peregrine's prospects and business; (ii) artificially inflated the price of Peregrine common stock; and (iii) caused plaintiff and other members of the Class to purchase Peregrine common stock at inflated prices.

## BACKGROUND

24.    Peregrine, a biopharmaceutical company, engages in the research and development of monoclonal antibodies for the treatment and diagnosis of cancer and viral infections. Peregrine's key product is bavituximab, a PS targeting anti-body. It

1  is conducting clinical trials of the drug as a treatment for cancers of the pancreas,

2  liver, prostate, breast and for the viral infection Hepatitis C.  Peregrine is studying

3  bavituximab as a primary or front-line and second-line treatment for non-small cell

4  lung cancer.  The Company is also testing a brain cancer drug called Cotara.

**DEFENDANTS' FALSE AND MISLEADING STATEMENTS
ISSUED DURING THE CLASS PERIOD**

25.    On August 30, 2012, Peregrine announced that it had secured a $30

million term loan from Oxforde.  Under the loan facility, the Company received initial

funding of $15 million and had an option to receive an addition $15 million.  The

release stated in part:

> "This loan facility strengthens our balance sheet as we approach
> near-term clinical milestones and continue our ongoing partnering
> discussions," said Paul J. Lytle, chief financial officer of Peregrine.
> "With the potential $30 million in total funding, we will have sufficient
> capital to fund our operations for at least the next 12 months as we
> advance our lead program toward Phase III development. Leveraging the
> proof-of-concept data in our lead bavituximab indication in second-line
> non-small cell lung cancer and our growing contract manufacturing
> business enabled us to secure this facility, which accomplished the near-
> term financing goal we announced in mid-July. We appreciate the
> support of our lender group, their flexibility in structuring a two-tranched
> loan, and their confidence in the bavituximab program."

26.    On September 7, 2012, Peregrine issued a press release announcing

interim data from the Company's Phase II trial in second-line non-small cell lung

cancer that was presented at the 2012 Chicago Multidisciplinary Symposium in

Thoracic Oncology.  According to the Company, the interim results indicated that

lung cancer patients taking bavituximab lived twice as many months as those treated

with only chemotherapy.  In a mid-stage study of 121 patients, the patients given a

lower dose of bavituximab and the chemotherapy drug docetaxel lived for a median of 11.1 months compared with 5.6 months for patients treated with the chemotherapy drug and a placebo.  Patients given a higher dose of the drug lived for a median of 13.1 months, resulting in a pooled survival time of 12.1 months for the treated group. The release further stated in part:

"This study was a rigorous trial designed to minimize bias and we are encouraged that this trial yielded such positive results in the most important endpoint, overall survival.  The positive overall response rates and progression free survival in both bavituximab-containing arms seen earlier in the study has now translated into a statistically significant extension in overall survival for patients, a result rarely achieved in phase II clinical trials." said Joseph Shan, vice president of clinical and regulatory affairs at Peregrine. "The quality of this data gives us a solid foundation for designing a phase III trial with an increased probability of success. We are planning for an end-of-phase II meeting with the FDA as we plan to initiate this trial by mid-2013."

\* \* \*

"Robust data from this Phase II trial clearly demonstrate a significant benefit in overall survival with a good safety profile in patients receiving bavituximab plus docetaxel compared to those receiving docetaxel plus placebo," said Steven W. King, president and chief executive officer of Peregrine. "We are currently in discussions with several potential pharmaceutical partners who have expressed great interest in our bavituximab oncology program. It is our goal to identify the optimal partner to assist with the design and logistics of a multinational Phase III pivotal trial."

\* \* \*

"The median overall survival results from the Proof-of Concept study are truly outstanding and great news for patients. Statistically significant overall survival results at this stage of development are rare and have put us in an excellent position for advancing the program. Our attention is now turned to an end of phase II meeting by year end which will help us define the most efficient path forward to potential regulatory approval," said Robert Garnick, PhD, head of regulatory affairs at Peregrine. "A global Phase III trial designed very similarly to the robust design of this Phase II trial greatly increases bavituximab's likelihood of success."

27. On September 10, 2012, Peregrine issued a press release announcing its first quarter fiscal year 2013 financial results.[1] The Company provided an update on the development of bavituximab. The release stated in part:

"We have achieved major milestones since the end of last quarter with the unblinding of our proof-of-principle bavituximab study in second-line NSCLC in May and the recent announcement of overall survival data from the study being the most significant. The statistically significant overall survival seen in that study is an obvious green light for us to begin plans to advance the program into Phase III and goes a long way toward validating the technology platform," said Steven W. King, president and chief executive officer of Peregrine. "Following these exciting developments, the upcoming milestones for the program include additional clinical data from eight ongoing bavituximab clinical trials, an end of Phase II meeting with the FDA expected by year end, and potential partnership as the result of ongoing discussions. This is

---

[1] Peregrine's fiscal year ends April 30.

1   truly an exciting time at Peregrine and we look forward to advancing the

2   bavituximab program as well as the rest of our business operations."

3       28.    Subsequently, on September 10, 2012, the Company filed its Form 10-Q

4   with the SEC for the first quarter of fiscal year 2013.  The 10-Q contained the positive

5   findings concerning bavituximab that were contained in the Company's September 7,

6   2012 press release.  Defendants King and Lytle signed the 10-Q attesting to the

7   accuracy of the information presented in the SEC filing.

8       29.    On September 24, 2012, Peregrine issued a press release entitled

9   "Peregrine Pharmaceuticals Announces That It Has Discovered Major Discrepancies

10   in Treatment Group Coding by an Independent Third-Party Vendor Responsible for

11   Distribution of Blinded Investigational Product Used in Its Bavituximab Phase II

12   Second-Line Non-Small Cell Lung Cancer Trial," which stated in part:

13       Peregrine Pharmaceuticals announced today that during the course of

14       preparing for an end-of-phase II meeting with regulatory authorities and

15       following recent data announcements from its randomized, double-blind

16       placebo-controlled Phase II trial of bavituximab in second-line non-small

17       cell lung cancer, it discovered major discrepancies between some patient

18       sample test results and patient treatment code assignments. Due to the

19       double-blind nature of the trial, Peregrine was not permitted to have

20       access to either patient group assignments or related product coding

21       information. As part of the trial's execution, Peregrine contracted with

22       independent third-party contractors to execute treatment group

23       assignments and oversee clinical trial material coding and distribution

24       according to established procedures. A subsequent review of information

25       has determined that the source of these discrepancies appear to have

26       been associated with the independent third-party contracted to code and

27       distribute investigational drug product.

28

1    This discrepancy is specific to this trial and will have no impact on
2    other ongoing bavituximab trials.

3    Peregrine intends to communicate further as soon as it is able to
4    determine the impact of this issue. In the meantime, investors should not
5    rely on clinical data that the company disclosed on or before September
6    7, 2012 from its Phase II bavituximab trial in patients with second-line
7    non-small cell lung cancer or any presentations or other documents
8    related to this Phase II trial.

9    30.    After this news, Peregrine's stock plummeted $4.23 per share to close at
10   $1.16 per share on September 24, 2012, a one-day decline of 78% on high volume.

11   31.    On September 26, 2012, Peregrine filed a Form 8-K with the SEC, which
12   disclosed that the Company had received a written notice of default from Oxford, with
13   respect to a security agreement the Company had entered into on August 30, 2012.
14   According to the Company, the lender deemed the Company's disclosure on
15   September 24, 2012 concerning the major discrepancies in the results from its cancer
16   trial to be a material adverse change under the terms of the loan agreement and, as
17   result, the lender accelerated the repayment of the loan and demanded repayment in
18   full for the outstanding amounts.  The Form 8-K stated in part:

19   On September 24, 2012, we received a written notice of default
20   ("Notice of Default") from Oxford Finance LLC, as collateral agent
21   ("Collateral Agent"), on behalf of itself, Silicon Valley Bank, and
22   MidCap Financial SBIC, LP (collectively, the "Lenders"), with respect
23   to that certain loan and security agreement dated as of August 30, 2012,
24   by and among Peregrine, its wholly owned subsidiary, Avid Bioservices,
25   Inc., and the Lenders (the "Loan Agreement"). Pursuant to the Notice of
26   Default, all amounts due under the Loan Agreement were accelerated as
27   a result of the above event, which was deemed a material adverse change
28   under the Loan Agreement, and the Lenders demanded full payment of

all obligations under the Loan Agreement, including the outstanding principal amount of $15 million and all accrued interest thereon, plus a final payment fee equal to 6.5% of the principal amount repaid. On September 25, 2012 Peregrine paid the Lenders all outstanding obligations and the Loan Agreement was terminated.

Based on these developments, we believe we will have sufficient capital to fund our operations into the fourth quarter of our fiscal year 2013 based on current projections, which includes projected cash inflows under signed contracts with existing customers of Avid Bioservices, and assumes we raise no additional capital from the capital markets or other potential sources. There are a number of uncertainties associated with our financial projections, including but not limited to, termination of third party contracts, technical challenges, the rate at which patients are enrolled into any current or future clinical trials, any of which could reduce, delay or accelerate our future projected cash inflows and outflows.

32.     On this news, Peregrine's stock declined $0.55 per share to close at $1.11 per share on September 27, 2012, a one-day decline of 33% on high volume.

33.     The true facts, which were known by the defendants but concealed from the investing public during the Class Period, were as follows:

(a)     The previously reported results from Peregrine's Phase II trial in second-line non-small cell lung cancer could not be relied upon, as major discrepancies existed between patient sample test results and patient treatment codes;

(b)     Peregrine lacked the proper internal controls related to conducting clinical trials and reporting the results of the clinical trials;

(c)     Peregrine lacked sufficient capital to fund its operations for the long term; and

(d)     Peregrine lacked a reasonable basis to make positive statements about the Company or its outlook, including statements about the effectiveness of bavituximab for patients with non-small cell lung cancer or the Company's ability to fund its operations for the next 12 months.

34.     As a result of defendants' false statements, Peregrine stock traded at artificially inflated levels during the Class Period.   However, after the above revelations seeped into the market, the Company's shares were hammered by massive sales, sending them down 79% from their Class Period high.

<b>LOSS CAUSATION</b>

35.     During the Class Period, as detailed herein, the defendants made false and misleading statements and engaged in a scheme to deceive the market and a course of conduct that artificially inflated the price of Peregrine common stock and operated as a fraud or deceit on Class Period purchasers of Peregrine common stock by misrepresenting the Company's business and prospects.   Later, when the defendants' prior misrepresentations and fraudulent conduct became apparent to the market, the price of Peregrine common stock fell precipitously, as the prior artificial inflation came out of the price over time.   As a result of their purchases of Peregrine common stock during the Class Period, plaintiff and other members of the Class suffered economic loss, *i.e.*, damages, under the federal securities laws.

<b>NO SAFE HARBOR</b>

36.     Peregrine's verbal "Safe Harbor" warnings accompanying its oral forward-looking statements ("FLS") issued during the Class Period were ineffective to shield those statements from liability.

37.     The defendants are also liable for any false or misleading FLS pleaded because, at the time each FLS was made, the speaker knew the FLS was false or misleading and the FLS was authorized and/or approved by an executive officer of Peregrine who knew that the FLS was false.   None of the historic or present tense statements made by defendants were assumptions underlying or relating to any plan,

projection or statement of future economic performance, as they were not stated to be such assumptions underlying or relating to any projection or statement of future economic performance when made, nor were any of the projections or forecasts made by defendants expressly related to or stated to be dependent on those historic or present tense statements when made.

## CLASS ACTION ALLEGATIONS

38.     Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all persons who purchased or otherwise acquired Peregrine common stock during the Class Period (the "Class"). Excluded from the Class are defendants and their families, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

39.     The members of the Class are so numerous that joinder of all members is impracticable. The disposition of their claims in a class action will provide substantial benefits to the parties and the Court. Peregrine has over 104 million shares of stock outstanding, owned by hundreds if not thousands of persons.

40.     There is a well-defined community of interest in the questions of law and fact involved in this case. Questions of law and fact common to the members of the Class which predominate over questions which may affect individual Class members include:

(a)     whether the 1934 Act was violated by defendants;

(b)     whether defendants omitted and/or misrepresented material facts;

(c)     whether defendants' statements omitted material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading;

(d)     whether defendants knew or deliberately disregarded that their statements were false and misleading;

- 12 -

(e)     whether the price of Peregrine common stock was artificially inflated; and

(f)     the extent of damage sustained by Class members and the appropriate measure of damages.

41.     Plaintiff's claims are typical of those of the Class because plaintiff and the Class sustained damages from defendants' wrongful conduct.

42.     Plaintiff will adequately protect the interests of the Class and has retained counsel who are experienced in class action securities litigation.  Plaintiff has no interests which conflict with those of the Class.

43.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

## COUNT I

**For Violation of §10(b) of the 1934 Act and Rule 10b-5
Against All Defendants**

44.     Plaintiff incorporates ¶¶1-43 by reference.

45.     During the Class Period, defendants disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

46.     Defendants violated §10(b) of the 1934 Act and Rule 10b-5 in that they:

(a)     employed devices, schemes and artifices to defraud;

(b)     made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

(c)     engaged in acts, practices and a course of business that operated as a fraud or deceit upon plaintiff and others similarly situated in connection with their purchases of Peregrine common stock during the Class Period.

- 13 -

47.     Plaintiff and the Class have suffered damages in that, in reliance on the integrity of the market, they paid artificially inflated prices for Peregrine common stock.  Plaintiff and the Class would not have purchased Peregrine common stock at the prices they paid, or at all, if they had been aware that the market price had been artificially and falsely inflated by defendants' misleading statements.

## COUNT II

### For Violation of §20(a) of the 1934 Act
### Against All Defendants

48.     Plaintiff incorporates ¶¶1-47 by reference.

49.     The Individual Defendants acted as controlling persons of Peregrine within the meaning of §20(a) of the 1934 Act.  By virtue of their positions with the Company, and ownership of Peregrine stock, the Individual Defendants had the power and authority to cause Peregrine to engage in the wrongful conduct complained of herein.  Peregrine controlled the Individual Defendants and all of its employees.  By reason of such conduct, defendants are liable pursuant to §20(a) of the 1934 Act.

### PRAYER FOR RELIEF

WHEREFORE, plaintiff prays for judgment as follows:

A.     Declaring this action to be a proper class action pursuant to Fed. R. Civ. P. 23;

B.     Awarding plaintiff and the members of the Class damages, including interest;

C.     Awarding plaintiff's reasonable costs and attorneys' fees; and

D.     Awarding such equitable/injunctive or other relief as the Court may deem just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury.

DATED: September 28, 2012

ROBBINS GELLER RUDMAN
  & DOWD LLP
DARREN J. ROBBINS
DAVID C. WALTON
CATHERINE J. KOWALEWSKI


CATHERINE J. KOWALEWSKI

655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)

HOLZER HOLZER & FISTEL, LLC
COREY D. HOLZER
MICHAEL I. FISTEL, JR.
MARSHALL P. DEES
200 Ashford Center North, Suite 300
Atlanta, GA 30338
Telephone: 770/392-0090
770/392-0029 (fax)

DYER & BERENS LLP
JEFFREY A. BERENS
303 East 17th Avenue, Suite 300
Denver, CO 80203
Telephone: 303/861-1764
303/395-0393 (fax)

Attorneys for Plaintiff

S:\CptDraft\Securities\Cpt Peregrine Pharmaceuticals.doc

**CERTIFICATION OF NAMED PLAINTIFF**
**PURSUANT TO FEDERAL SECURITIES LAWS**

The undersigned declares, as to the claims asserted under the federal securities laws, that:

Plaintiff has reviewed the initial complaint filed in this action.

Plaintiff did not purchase and/or acquire the security that is the subject of this action at the direction of Plaintiff's counsel or in order to participate in any private action under the federal securities laws.

Plaintiff is willing to serve as a representative party on behalf of the class, including providing testimony at deposition and trial, if necessary. I understand that this is not a claim form, and that my ability to share in any recovery as a member of the class is not dependent upon execution of this Plaintiff Certification.

Plaintiff's transactions in the security that is the subject of this action during the Class Period are as follows:

Purchases:

| Name of Company | Date(s) Purchased | # Shares Purchased | Cost |
|---|---|---|---|
| PPHM | 9/10/12 | 281 | $ 4.71/share |
| PPHM | 9/10/12 | 290 | $ 4.69/share |

Sales:

| Name of Company | Date(s) Sold | # Shares Sold | Proceeds |
|---|---|---|---|
| PPHM | 9/10/12 | 281 | $ 4.98/share |

During the three (3) years prior to the date of this certification, Plaintiff has not sought to serve or served as a class representative in an action filed under the federal securities laws except for the following (if any):

1

Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond Plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the court.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this __27__ day of __Sept__, 2012 in _____Duluth_____, ____Georgia____.
                                              City                State

(Signature) X _____

(Print Name)____Nathaniel  Anderson_____

2

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge Stephen V. Wilson and the assigned discovery Magistrate Judge is Stephen J. Hillman.

The case number on all documents filed with the Court should read as follows:

### SACV12- 1647 SVW (SHx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

=============================================

**NOTICE TO COUNSEL**

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| ☒ **Western Division**<br>312 N. Spring St., Rm. G-8<br>Los Angeles, CA 90012 | ☐ **Southern Division**<br>411 West Fourth St., Rm. 1-053<br>Santa Ana, CA 92701-4516 | ☐ **Eastern Division**<br>3470 Twelfth St., Rm. 134<br>Riverside, CA 92501 |
|---|---|---|

Failure to file at the proper location will result in your documents being returned to you.

CV-18 (03/06)          NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

Name & Address:

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NATHANIEL L. ANDERSON, Individually and on Behalf of All Others Similarly Situated<br><br>PLAINTIFF(S)<br><br>v.<br><br>PEREGRINE PHARMACEUTICALS, INC., STEVEN W. KING, PAUL J. LYTLE, JOSEPH S. SHAN and ROBERT L. GARNICK<br>DEFENDANT(S). | CASE NUMBER<br><br>**SACV12-01647 SVW (SHx)**<br><br><br>**SUMMONS** |

TO:    DEFENDANT(S):

      A lawsuit has been filed against you.

      Within ___21___ days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☑ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff's attorney, Catherine J. Kowalewski_____, whose address is Robbins Geller Rudman & Dowd LLP, 655 W. Broadway, #1900, San Diego, CA 92101 . If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

Clerk, U.S. District Court

Dated: _____SEP 2 8 2012_____

By: ___A. Gonzalez_____

Deputy Clerk

(Seal of the Court)

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States. Allowed 60 days by Rule 12(a)(3)].*

CV-01A (10/11)                                 **SUMMONS**

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
CIVIL COVER SHEET

| I (a) PLAINTIFFS (Check box if you are representing yourself ☐) | DEFENDANTS |
|---|---|
| NATHANIEL L. ANDERSON, Individually and on Behalf of All Others Similarly Situated<br><br>Georgia | PEREGRINE PHARMACEUTICALS, INC., STEVEN W. KING, PAUL J. LYTLE, JOSEPH S. SHAN and ROBERT L. GARNICK |

| (b) Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.) | Attorneys (If Known) |
|---|---|
| Catherine J. Kowalewski (216665)<br>Robbins Geller Rudman & Dowd LLP<br>655 West Broadway, Suite 1900, San Diego, CA 92101  619.231.1058 | |

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff  ☑ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant  ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☑ 1 Original Proceeding  ☐ 2 Removed from State Court  ☐ 3 Remanded from Appellate Court  ☐ 4 Reinstated or Reopened  ☐ 5 Transferred from another district (specify):  ☐ 6 Multi-District Litigation  ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT:  JURY DEMAND:** ☑ Yes  ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☑ Yes  ☐ No  ☐ **MONEY DEMANDED IN COMPLAINT:** $

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
15 U.S.C. §§78j(b) and 78t(a)    COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS | TORTS | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL PROPERTY** | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 535 Death Penalty | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | ☐ 540 Mandamus/ Other | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 550 Civil Rights | ☐ 740 Railway Labor Act |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 555 Prison Condition | ☐ 790 Other Labor Litigation |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | ☐ 151 Medicare Act | ☐ 340 Marine | **BANKRUPTCY** | **FORFEITURE / PENALTY** | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 480 Consumer Credit | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 610 Agriculture | **PROPERTY RIGHTS** |
| ☐ 490 Cable/Sat TV | | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | ☐ 620 Other Food & Drug | ☐ 820 Copyrights |
| ☐ 810 Selective Service | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 355 Motor Vehicle Product Liability | **CIVIL RIGHTS** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 830 Patent |
| ☑ 850 Securities/Commodities/ Exchange | ☐ 160 Stockholders' Suits | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 630 Liquor Laws | ☐ 840 Trademark |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 190 Other Contract | ☐ 362 Personal Injury-Med Malpractice | ☐ 442 Employment | ☐ 640 R.R. & Truck | **SOCIAL SECURITY** |
| ☐ 890 Other Statutory Actions | ☐ 195 Contract Product Liability | ☐ 365 Personal Injury-Product Liability | ☐ 443 Housing/Acco-mmodations | ☐ 650 Airline Regs | ☐ 861 HIA (1395ff) |
| ☐ 891 Agricultural Act | ☐ 196 Franchise | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | ☐ 660 Occupational Safety /Health | ☐ 862 Black Lung (923) |
| ☐ 892 Economic Stabilization Act | **REAL PROPERTY** | | ☐ 445 American with Disabilities - Employment | ☐ 690 Other | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 893 Environmental Matters | ☐ 210 Land Condemnation | | | | ☐ 864 SSID Title XVI |
| ☐ 894 Energy Allocation Act | ☐ 220 Foreclosure | **IMMIGRATION** | ☐ 446 American with Disabilities - Other | | ☐ 865 RSI (405(g)) |
| ☐ 895 Freedom of Info. Act | ☐ 230 Rent Lease & Ejectment | ☐ 462 Naturalization Application | ☐ 440 Other Civil Rights | | **FEDERAL TAX SUITS** |
| ☐ 900 Appeal of Fee Determination Under Equal Access to Justice | ☐ 240 Torts to Land | ☐ 463 Habeas Corpus-Alien Detainee | | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 950 Constitutionality of State Statutes | ☐ 245 Tort Product Liability | ☐ 465 Other Immigration Actions | | | ☐ 871 IRS-Third Party 26 USC 7609 |
| | ☐ 290 All Other Real Property | | | | |

**FOR OFFICE USE ONLY:**  Case Number: _____ **SACV12-01647 SVW (SHx)**

AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.

CV-71 (05/08)                    CIVIL COVER SHEET                    Page 1 of 2

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
CIVIL COVER SHEET

**VIII(a).  IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed?  ☑ No   ☐ Yes
If yes, list case number(s): _____

**VIII(b).  RELATED CASES:** Have any cases been previously filed in this court that are related to the present case?  ☑ No   ☐ Yes
If yes, list case number(s): _____

**Civil cases are deemed related if a previously filed case and the present case:**
(Check all boxes that apply)   ☐ A.  Arise from the same or closely related transactions, happenings, or events; or
                                              ☐ B.  Call for determination of the same or substantially related or similar questions of law and fact; or
                                              ☐ C.  For other reasons would entail substantial duplication of labor if heard by different judges; or
                                              ☐ D.  Involve the same patent, trademark or copyright, **and** one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named plaintiff resides.
☐   Check here if the government, its agencies or employees is a named plaintiff.  If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
|  | Georgia |

(b)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named defendant resides.
☐   Check here if the government, its agencies or employees is a named defendant.  If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Orange County |  |

(c)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH claim arose.
         **Note: In land condemnation cases, use the location of the tract of land involved.**

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Orange County |  |

**\* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties**
Note: In land condemnation cases, use the location of the tract of land involved

X.  SIGNATURE OF ATTORNEY (OR PRO PER): _Cathrine Vanderlaan_      Date  September 28, 2012

Notice to Counsel/Parties:   The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings
or other papers as required by law.  This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed
but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet.  (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |